# In the United States Court of Federal Claims

No. 22-543C
(Filed Under Seal: September 28, 2022)
(Reissued: October 13, 2022)*
**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
|   |   |
|---|---|
| ESIMPLICITY, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Eric A. Valle*, PilieroMazza PLLC, Washington, D.C., for Plaintiff. With him on the briefs were *Isaias "Cy" Alba, IV*, *Katherine B. Burrows*, and *Patrick T. Rothwell*, PilieroMazza PLLC, Washington, D.C.

*Jana Moses*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With her on briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Douglas K. Mickle*, Assistant Director, and *Shantay N. Clarke*, Senior Assistant Counsel, NAVSUP Fleet Logistics Center Norfolk, Philadelphia, PA.

## OPINION AND ORDER

Plaintiff eSimplicity, Inc. protests the government's rejection of a proposal it submitted in response to a solicitation. The government determined that the proposal was untimely; eSimplicity contends that determination rests on legal error and the application of an undisclosed evaluation criterion. The parties have filed cross-motions for judgment on the administrative record, and I have heard oral argument.[1] For the reasons discussed below, Plaintiff's motion is **GRANTED** and Defendant's

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on September 28, 2022, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by October 12, 2022. The parties notified the Court that there were no proposed redactions. The Court hereby releases publicly the opinion and order of September 28 in full.

[1] Pl.'s Mot. for J. on the Administrative R. (ECF 25) ("Pl.'s MJAR"); Def.'s Cross-Mot. for J. on the Administrative R. & Opp. (ECF 27) ("Def.'s MJAR"); Pl.'s Resp. & Reply (ECF 30) ("Pl.'s R&R"); Def.'s Reply (ECF 31); Hearing Tr. (ECF 35) ("Tr.").

motion is **DENIED**. The case is **REMANDED** for further proceedings. The government is **ENJOINED** from certain action inconsistent with this Opinion.

## BACKGROUND

Submitting a proposal in response to a government solicitation means complying with strict deadlines. This Court sometimes calls that obligation the "'late is late' rule." *See Insight Systems Corp. v. United States*, 110 Fed. Cl. 564, 574 (2013). Under the "late is late" rule, submissions received even moments after the deadline are disqualified unless they meet certain limited exceptions:

> (2)(i) Any offer, modification, revision, or withdrawal of an offer received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and—
>
> (A) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of offers; or
>
> (B) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or
>
> (C) If this solicitation is a request for proposals, it was the only proposal received.

*See* Federal Acquisition Regulations ("FAR") 52.212-1(f)(2) (codified at 48 C.F.R.); *see also* FAR 52.212-1(f)(4) (tolling deadlines during interruptions of government processes); *Insight Systems*, 110 Fed. Cl. at 575 (exception for lateness caused by the government). The first of those exceptions (FAR 52.212-1(f)(2)(i)(A)) is sometimes called the "electronic commerce" exception. The second (FAR 52.212-1(f)(2)(i)(B)) is sometimes called the "government control" exception.

With the basic legal background in mind, the relevant facts are as follows. Solicitation No. N0018922RZ011, issued by the Department of the Navy, requested technical support for the Navy's electromagnetic spectrum resources. Administrative Record ("AR") 109. The Solicitation required that proposals be submitted by e-mail no later than April 25, 2022, at 5:00 p.m. EST. AR 99, 124. The Solicitation included instructions for proposal formatting — *e.g.*, division of proposals into volumes, one of which was subject to a 30-page limit — but did not mention a maximum file size. AR 126.

eSimplicity e-mailed its proposal before the deadline on April 25, and its e-mail application confirmed delivery to the government server. AR 148. A screenshot of the submission shows that the e-mail included three files totaling approximately 23 MB. AR 158; *see also* Compl. Exh. A, Attachment 1 (ECF 1-1). But eSimplicity never received either a confirmation of receipt or a delivery failure notification. When eSimplicity inquired about the proposal's status, it turned out that the proposal had not arrived in the recipient's e-mail account.

The Defense Information Systems Agency ("DISA") performed a forensic investigation. The investigation revealed that eSimplicity's proposal had been received by a DISA-managed server and queued for delivery, but that it had been "bounced back by the destination server because it exceeded the maximum file size." AR 165. The record is ambiguous as to whether the DISA server contains a copy of eSimplicity's proposal or only a log entry for the submission, but according to the technician who performed the investigation, the e-mail containing the proposal was 31.8 MB. *Id.*[2] Even though the DISA server did not complete delivery, the technician confirmed that no delivery failure notice was sent to eSimplicity. AR 162.

The Navy then sent eSimplicity a letter explaining that the proposal was late and would not be considered. AR 168. The Navy's stated reason for its determination was that the proposal had not been received "by the exact time specified in the solicitation" and that the FAR 52.212-1(f)(2)(i)(A) "electronic commerce" exception — for electronic submissions received by 5:00 p.m. the working day before the deadline — was unmet. *Id.*

The present lawsuit and the parties' cross-motions followed.

## **DISCUSSION**

### I. **Legal Standards**

#### A. **Standing**

To reach the merits of the case, I must first determine that the Court has jurisdiction over eSimplicity's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This Court's jurisdiction in bid protests rests on the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)); *see Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 464–65 (2008). The Tucker Act now grants this Court jurisdiction "to render judgment on an action by an interested party

---

[2] The record does not explain the discrepancy in file sizes between eSimplicity's screenshot and the DISA investigation. eSimplicity suggests that the DISA server may modify proposals in some way that increases file sizes. Tr. at 38.

objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to … the award of a contract or any alleged violation of statute or regulation in connection with a procurement[.]" 28 U.S.C. § 1491(b)(1).

"[S]tanding is a threshold jurisdictional issue," *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002), and only an "interested party" has standing to challenge a solicitation. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358–59 (Fed. Cir. 2009). In pre-award bid protests, a plaintiff establishes that it is an interested party by showing (1) that it is an actual or prospective bidder, *see Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (2001), and (2) that it has a "direct economic interest" in the contract's award, *see Weeks Marine*, 575 F.3d at 1360, an element that in turn requires the bidder to show a "non-trivial competitive injury which can be addressed by judicial relief," *id.* at 1362.

Here, there is no dispute that eSimplicity is an actual bidder. And the government does not disagree that eSimplicity suffered a non-trivial competitive injury when its proposal was rejected. This Court has held that rejection of a proposal without substantive consideration is a non-trivial competitive injury. *See T Square Logistics Services Corp. v. United States*, 134 Fed. Cl. 550, 556 (2017); *see also Distributed Solutions, Inc. v. United States*, 104 Fed. Cl. 368, 380–81 (2012). That injury can be redressed by this Court. I therefore conclude that eSimplicity has standing.

### B. Merits

This Court reviews bid protests "pursuant to the standards set forth in section 706 of title 5," *i.e.*, the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). That standard requires the Court to consider whether the contracting agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). There are two bases for setting aside government procurements as arbitrary and capricious: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000).

The first route involves determining "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d

at 1332–33 (quotes omitted) (citing *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). To succeed in that way, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (quotes omitted) (citing *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)). The second route requires the disappointed bidder to "show a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quotes omitted). This Court has denied relief where the violation is not "clear," but merely "colorable." *FirstLine Transp. Sec. v. United States*, 107 Fed. Cl. 189, 205 (2012). In either case, review is "highly deferential" to agency decision-making. *Id.* at 196 (citing *Advanced Data Concepts*, 216 F.3d at 1058).

The applicable standards also require a protestor to demonstrate, on the merits, that it was prejudiced by the agency's conduct. 5 U.S.C. § 706; *see also, e.g.*, *Glenn Def. Marine*, 720 F.3d at 907; *Bannum*, 404 F.3d at 1351.

When resolving motions for judgment on the administrative record under Rule 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1354 (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012).

## II. <u>Unstated Evaluation Criteria</u>

The Navy did not specify a file-size limit in the Solicitation. But because of the size of eSimplicity's proposal, the proposal did not reach its destination, so the Navy deemed it late and refused to consider it. eSimplicity contends that because the Navy in effect rejected the proposal because of its size, the Navy applied an unstated evaluation criterion that was not included in the Solicitation.[3] Pl.'s MJAR at 18. I conclude that the file size limitation was an unstated criterion, and that the Navy therefore acted arbitrarily and capriciously when it rejected eSimplicity's proposal.

The Navy's obligation to state the criteria for evaluating proposals is well established: Agencies must evaluate proposals "based solely on the factors specified in the solicitation." 41 U.S.C. § 3701(a); *see also* FAR 15.305(a). That means agencies "may not rely upon undisclosed evaluation criteria in evaluating proposals."[4] *Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. 377, 386 (2003) (citing *Acra, Inc. v. United States,* 44 Fed. Cl. 288, 293 (1999)), *aff'd*, 365 F.3d 1345. That obligation extends to *every* basis the agency might rely on to accept or reject a bid:

---

[3] eSimplicity argues in the alternative that because the Solicitation did not mention a file size limit, it contained a latent ambiguity. *See* Tr. at 40. I need not reach that characterization of the issue.

[4] This Court has often stated that an agency does not need to identify elements in a solicitation that are "intrinsic to the stated factors." *See, e.g.*, *Analytical & Research Tech., Inc. v. United States*, 39 Fed. Cl. 34, 45 (1997). But the file size of proposals does not appear to be intrinsic to any other criterion in the Solicitation, and the government has not argued that it is.

"All factors … that will affect contract award … shall be stated clearly in the solicitation[.]" FAR 15.304(d).[5]

To prevail on its claim that the Navy acted arbitrarily and capriciously by rejecting eSimplicity's proposal because of its file size, eSimplicity "must show that (i) the [Navy] used a significantly different basis in evaluating the proposals than was disclosed; and (ii) [eSimplicity] was prejudiced as a result — that it had a substantial chance to receive the contract award but for that error." *Banknote*, 56 Fed. Cl. at 387; *see also Frawner Corp. v. United States*, ___ Fed. Cl. ___, No. 22-cv-0078, 2022 WL 3211218, at *14 (2022).

Those elements are met. As to the first, the government does not argue that a file size limit was specified in the Solicitation in any way, *see* 41 U.S.C. § 3701(a); *see also* FAR 15.305(a), let alone that it was "stated clearly," FAR 15.304(d). But file size was plainly a "factor[] … that … affect[ed] contract award." *Id*. The government's sole reason for rejecting eSimplicity's proposal is its supposed lateness, and the sole reason for deeming it late is that it was too large for the destination server to accept it from the DISA server. Ergo, the government rejected eSimplicity's proposal based on its size: an unstated factor "significantly different" from the criteria mentioned in the Solicitation. *Banknote*, 56 Fed. Cl. at 387.

The government asserts that the Solicitation's direction to submit proposals by e-mail was "sufficient" to put bidders on notice that "oversized email attachments may be rejected as undeliverable by the gateway server." Def.'s MJAR at 31. That argument is not based on facts in the record, but on what the government presumes to be common experience with e-mail systems. The problem for the government is that even if eSimplicity should have been aware that the government e-mail servers had some theoretical limit on the file sizes they can accept and transmit, nothing in the record shows eSimplicity had notice of what the actual limit was. The government does not argue that eSimplicity was obligated to inquire about a size limit. Tr. at 76.

Moreover, even if eSimplicity should have known that "oversized email attachments may be rejected as undeliverable by the gateway server," Def.'s MJAR at 31, the DISA server appears to have *accepted* eSimplicity's proposal — it was the destination server that rejected it — and never sent eSimplicity a notification of delivery failure. AR 162, 165.[6] Rejecting eSimplicity's proposal when the e-mail was

---

[5] The word "shall" usually indicates that language is mandatory. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife,* 551 U.S. 644, 661–62 (2007); *Lopez v. Davis*, 531 U.S. 230, 241 (2001).

[6] The government analogizes this case's facts to a physical mailing: "A solicitation that accepts proposals by mail, for example, need not explain that insufficient postage will result in an undelivered mailing." Def.'s MJAR at 31. If anything, that cuts the other way. Postage rates — unlike the government e-mail servers' file-size limits — are set by regulation and available to the public. *See* U.S.

*not* "rejected as undeliverable by the gateway server," and where the servers did not put eSimplicity on notice that delivery had failed, thus went beyond the criteria e-mail users should have been expected to anticipate. Def.'s MJAR at 31; *Banknote*, 56 Fed. Cl. at 387.

The government also argues that a file-size limit is "not a substantive requirement for proposals but, instead, an instruction to potentially aid in the delivery of a proposal." Def.'s MJAR at 31. The FAR's requirement that agencies state evaluation criteria in solicitations, though, is not limited to "substantive requirement[s]." *Id.* Rather, it applies to "[a]ll factors … that will affect contract award[.]" FAR 15.304(d).[7] Those terms cover both substantive and non-substantive factors.

As to the second element, eSimplicity was prejudiced by the Navy's rejection of its proposal. Although distinct from a protestor's burden to show standing, *see Management & Training Corp. v. United States*, 115 Fed. Cl. 26, 36 (2014), the test for prejudice on the merits in bid protests generally involves the same inquiry.[8] In a pre-award protest, that means considering whether the protestor has shown a "non-trivial competitive injury[.]" *Savantage Fin. Serv., Inc. v. United States*, 150 Fed. Cl. 307, 317–18 (2020) (quoting *Oracle America, Inc. v. United States*, 975 F.3d 1279, 1291 (Fed. Cir. 2020) (itself quoting *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009))) (quotes omitted); *see also Weeks Marine*, 575 F.3d at 1362.[9]

Erroneous rejection of an otherwise acceptable proposal without substantive consideration generally constitutes a non-trivial competitive injury. *Electronic On-*

---

POSTAL SERV., PRICE LIST (2022); U.S. POSTAL SERV., U.S. POSTAL SERV. ANNOUNCES PROPOSED TEMPORARY RATE ADJUSTMENTS FOR 2022 PEAK HOLIDAY SEASON (AUG. 10, 2022).

[7] In fact, solicitations have stated file-size limits on many recent occasions. *See* DEP'T OF DEFENSE, MRR LANDSCAPE AND MAINTENANCE SOLICITATION, H92257-22-Q-0043 (2022) (stating that "[e]mail attachments are limited to no more than 10 MB"); DEP'T OF DEFENSE, PROJECT CSC-15761-REPAIR AND SEAL FLOORS, SP4702-18-R-0534 (2022) (stating that the "acquisition specialist shall authorize receipt of e-mailed proposals only on those solicitations where there is a reasonable expectation the proposal will not exceed the maximum size limit of 15 MB"); DEP'T OF INTERIOR, EAST OREGON MANUAL HAZARDOUS FUEL REDUCTION, 140L0622R0014 (2022) (stating that "[t]he electronic file must be under 5 MB total to ensure it can be received by e-mail").

[8] "The difference between the two is that the prejudice determination for purposes of standing assumes all non-frivolous allegations to be true, whereas the post-merits prejudice determination is based only on those allegations which have been proven true." *L-3 Commc'ns Corp. v. United States*, 99 Fed. Cl. 283, 289 (2011).

[9] A higher standard, under which the protestor must show that "but for the error, it would have had a substantial chance of securing the contract," applies where "there is an adequate factual predicate" to apply it. *Savantage*, 150 Fed. Cl. at 317–18 (quoting *Oracle America*, 975 F.3d at 1291 n.3) (quotes omitted). In this case, where the administrative record is silent on the contents of the proposals submitted in response to the Solicitation, there is no way to evaluate eSimplicity's chance of award.

*Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 158, 169 (2012). Lost opportunity to compete in fact constitutes irreparable harm for purposes of injunctive relief. *See, e.g., T Square*, 134 Fed. Cl. at 560; *RLB Contracting, Inc. v. United States,* 118 Fed. Cl. 750, 761 (2014), *aff'd,* 621 F. App'x 1026 (Fed. Cir. 2015); *Electronic On-Ramp*, 104 Fed. Cl. at 169. I therefore conclude that eSimplicity has shown prejudice in this case. The case shall be remanded to the Navy on the terms set out below.

### III. <u>Government Control Exception</u>

The Navy rejected eSimplicity's proposal as untimely because it was "received at the Government office designated in the solicitation after the exact time specified for receipt of offers," FAR 52.212-1(f)(2)(i), and because the "electronic commerce" exception — covering proposals "received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of offers," FAR 52.212-1(f)(2)(i)(A) — was unmet. eSimplicity argues that the Navy should also have considered the "government control" exception, which applies when "[t]here is acceptable evidence to establish that [a proposal] was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers." FAR 52.212-1(f)(2)(i)(B); *see* Pl.'s MJAR at 9–17. The Navy responds that when proposals are submitted by e-mail, the electronic commerce exception is the sole exception to the "late is late" rule, and the government control exception is inapplicable. Def.'s MJAR at 9.

I agree with eSimplicity that it was arbitrary and capricious for the Navy to fail to consider the government control exception.

#### A. **This Court's precedent is split**

The Federal Circuit has not resolved whether the government control exception applies to electronically submitted proposals. This Court has addressed the question several times, with divergent conclusions and reasons.

This Court held in *Conscoop-Consorzia Fra Cooperative Di Prod. E. Lavoro v. United States* that the government control exception only applies to proposals submitted through non-electronic methods. 62 Fed. Cl. 219, 239–40 (2004) (applying similar timeliness requirements and exceptions in FAR 52.215–1(c)(3)). The Court relied on a GAO opinion concluding that applying the government control exception to electronic submissions "would essentially render the first exception [*i.e.*, the electronic commerce exception] a nullity," thus contravening the "fundamental principle that statutes and regulations must be read and interpreted as a whole,

thereby giving effect to all provisions." *Id.* (quoting *Sea Box, Inc.*, B–291056, 2002 CPD ¶ 181, 2002 WL 31445297, at *2 (Comp. Gen. Oct. 31, 2002)).[10]

There are two problems with that reasoning. First — as discussed in more detail below — it is not evident that the electronic commerce exception would in fact become a "nullity" if the government control exception also applied to electronic submissions. Second, and more importantly, the Supreme Court has since made clear that giving meaning to each provision in an enacted text is not a "fundamental principle," *id.*, but simply a "clue as to the better interpretation" of a text, for "[s]ometimes the better overall reading … contains some redundancy." *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019);[11] *see also Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020); *King v. Burwell*, 576 U.S. 473, 491 (2015); *Kawashima v. Holder*, 565 U.S. 478, 487–88 (2012); *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004). Rejecting a reading of a regulation merely because it would render part of the regulation redundant, without also considering whether that reading is the "better interpretation" of the regulation as a whole, is thus incomplete. *Rimini Street*, 139 S. Ct. at 881.

In contrast, several cases after *Conscoop-Consorzia* have applied the government control exception to electronic submissions. Those cases, though, are subject to criticisms of their own.

In *Watterson Construction Co. v. United States*, the Court reviewed the regulatory history of the timeliness exceptions and found that the electronic commerce exception was originally "targeted 'to accommodate the use of electronic systems which *batch-process communications overnight* and therefore, *require receipt of information one day in advance to ensure timely delivery* to the designated address.'" 98 Fed. Cl. 84, 96 (2011) (quoting Federal Acquisition Regulation Proposed Rule, 60 Fed. Reg. 12,384, 12,389 (proposed Mar. 6, 1995)) (applying FAR 52.215–1(c)(3)). Because batch-processing was "the *raison d'être*" of the electronic communications exception, *id.*, the Court concluded that "in cases of *non*-batch delivered electronic commerce, late proposals may be excused under any of the three exceptions" in the regulation, including the government control exception. *Id.* at 97 (emphasis added). The electronic commerce exception presumably would be the exclusive exception for batch-processed e-mails.

---

[10] The GAO continues to maintain that interpretation of the relevant regulations. *Versa Integrated Sols., Inc.*, B-420530, 2022 WL 1165978 at *3 (Comp. Gen. Apr. 13, 2022); *People, Technology & Processes, LLC*, B-419385, 2021 WL 873350 at *7 (Comp. Gen. Feb. 2, 2021).

[11] *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005) (noting that a court "construe[s] a regulation in the same manner as we construe a statute").

- 9 -

That is not consistent with the usual rules of textual interpretation either. The electronic commerce exception's text makes no distinction between batch-processed communications and other media. On the contrary, as the Court acknowledged, *id.* at 96 n.25, the FAR defines "electronic commerce" as "electronic techniques for accomplishing business transactions including electronic mail or messaging, World Wide Web technology, electronic bulletin boards, purchase cards, electronic funds transfer, and electronic data interchange" — a definition that does not even mention batch-processed e-mails and obviously extends to many other electronic communication methods. *See* FAR 2.101. That leaves no textual basis in the regulations for the *Watterson Construction* Court's reasoning. Concern about batch-processed e-mails may have been the expressed reason for proposing the electronic commerce exception, but pre-enactment considerations expressed in the Federal Register do not override a regulation's text. *See Glycine & More, Inc. v. United States*, 880 F.3d 1335, 1344 (Fed. Cir. 2018).

The Court revisited the issue in *Insight Systems Corp. v. United States*, holding that the government control exception applies to *all* electronically submitted proposals. 110 Fed. Cl. 564, 576 (2013). After concluding that electronic communications could be "received" at an "installation," as would be necessary to satisfy the government control exception, *id.* at 576–78, the Court addressed the government's argument that applying the government control exception would render the electronic commerce exception superfluous. *Id.* at 578–81.

The Court held that applying the government control exception to electronic submissions would not make the electronic commerce exception superfluous, but its reasons are difficult to understand. The Court explained that while the electronic commerce exception "creates a safe harbor for proposals transmitted using an electronic commerce method" by 5:00 p.m. the day before the proposal is due, "the other exceptions, however, still apply" if the electronic submission is submitted afterward. *Id.* at 578–79. "Viewed this way," the Court said, "it is evident that these provisions do not have coincident operation," so applying both to electronic proposals would not create surplusage. *Id.* at 579.

That is hard to square with the applicable canons. Words in an enacted text are superfluous if they do not change the text's practical, operational meaning — or, put another way, if the text would have the same practical effect if the words were removed. *See McFeely v. Commissioner of Internal Revenue*, 296 U.S. 102, 107 (1935); *cf. Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019). The Court's reasoning thus missed the point. What matters is not whether other exceptions might apply when the electronic commerce exception does not, let alone whether it could be labeled a "safe harbor," but whether there is any set of facts where the electronic commerce exception is the

only one that applies. If no such set of facts exists, the electronic commerce exception could be removed without effect, because other exceptions would cover all of its applications. In *that* circumstance, the electronic commerce exception would be surplusage — with whatever significance that might have.

The *Insight Systems* Court did not address the real question in any depth. The Court observed in a footnote that because the government control exception "requires not only that the proposal be received, but also that it be under the 'government's control,'" while the electronic commerce exception requires only that a proposal be "received," there might be situations where a proposal is "received" in time for the electronic commerce exception to apply but is never under government "control." *Id.* at 579 n.20. In such a case, the electronic commerce exception would be satisfied but the government control exception would not. The Court suggested that distinction might matter if "an electronic transmission is received at the entry point by 5:00 pm on the day before submissions are due, but rejected by the initial server in the agency's mail system and returned to the sender," because "[i]n that instance, the transmission might qualify under the safe harbor, even though it was not under the government's control." *Id.* Yet the Court did not elaborate on why those facts involve "receipt" of an electronic submission but not "control."

Two subsequent decisions of this Court follow *Watterson Construction* and *Insight Systems*, but with little additional analysis. In *Federal Acquisition Services Team, LLC v. United States* ("*FAST*"), where the government did not argue against application of the government control exception to electronic communications, this Court adopted the incomplete reasoning from the prior cases "without reservation." 124 Fed. Cl. 690, 703 (2016). And in *KGL Food Services WLL v. United States*, this Court held that the elements of the government control exception were not met without reassessing the reasoning of the past cases. 153 Fed. Cl. 497, 509–10 (2021).

In short, the decisions of nearly twenty years of litigation on the precise issue the parties present here are of limited use for resolving this case.

### B. The government control exception encompasses electronically submitted proposals

For several reasons, I conclude that the government control exception encompasses electronically submitted proposals.[12]

---

[12] eSimplicity argues — based on publicly available portions of the record in *FAST* and *KGL* — that the government should be judicially estopped from arguing that the government control exception is inapplicable. Pl.'s R&R at 3. Although there is no authoritative statement of the elements of judicial estoppel in this Court, at least two factors are essential. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.*

As this Court held in *Insight Systems*, the terms of the government control exception are as amenable to electronic submissions as to paper ones. The exception applies, again, when a proposal was "received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers." FAR 52.212-1(f)(2)(i)(B). Absent a regulatory definition, words in a regulation are controlled by their plain and ordinary meaning. *Tesoro Hawaii*, 405 F.3d at 1346–47 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414–15 (1945)). The government does not seriously dispute the *Insight Systems* Court's conclusion that an electronic proposal can be "received" and "under [the recipient's] control," in some sense, even if the nature of receipt and control differ for electronic and physical documents. Moreover, the government does not seem to disagree that an "installation" can include a government office's electronic components, such as e-mail servers. *See Installation, Oxford English Dictionary*, https://tinyurl.com/bddz6xtn (last visited Sept. 6, 2022) ("[A] mechanical apparatus set up or put in position for use.")

Rather, the government's argument is that applying the government control exception to electronic proposals, in addition to the electronic commerce exception, would violate the principle that the specific controls the general, and thereby create surplusage.[13] I follow the majority of this Court's decisions (albeit for somewhat different reasons) in rejecting the government's argument.

---

(quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999). Second, the party must have succeeded in persuading the court to adopt its earlier position. *Id.*

As to *FAST*, eSimplicity has not shown that the government's position was clearly inconsistent with the government's position here. The government in *FAST* declined to argue that the government control exception is inapplicable to electronic proposals, but argued instead that the exception was not satisfied on the facts. 124 Fed. Cl. at 702. eSimplicity cites no authority for the proposition that waiving an argument in one case is clearly inconsistent with asserting the argument in a later case.

In addition, the government did not persuade the Court to adopt its position in either case. In *FAST*, the Court rejected the government's argument that precedents applying the government control exception could be distinguished on their facts. *FAST*, 124 Fed. Cl. at 704. In *KGL*, the government argued that the government control exception *did* apply to an emailed proposal, but the Court rejected its argument because the record did not show receipt or control. *KGL*, 153 Fed. Cl. at 509.

[13] The government also argues that applying the government control exception would "place[] contracting officers in the precarious position of making important procurement decisions without any certainty regarding the law or how to apply it," in part because "a contracting officer who becomes aware that an offeror attempted to submit a proposal that was delivered late or was never received must commence an investigation into the transmission of the proposal, which can be a cumbersome process involving third-party systems and agencies." Def.'s MJAR at 22. Neither consideration overrides the regulatory text, and neither is persuasive on its own terms. To the extent contracting officers face confusion about the law, it predates this case by more than a decade and only the Federal Circuit or Supreme Court (or a revision of the regulations) can resolve it definitively. Likewise, investigating compliance with the electronic commerce exception would presumably involve technical challenges of its own, challenges that would arise more frequently if bidders felt the need to submit electronic proposals a day early in order to avoid the situation presented in this case.

First, it does not appear that applying both exceptions to electronic proposals would in fact turn the electronic commerce exception into surplusage. One of the "most basic interpretive canons" is that "a statute or regulation 'should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant[.]'" *Baude v. United States*, 955 F.3d 1290, 1305 (Fed. Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Yet textual differences between the electronic commerce and government control exception suggest that the former may have at least some applications where the latter does not, meaning that it would not be surplusage even if both exceptions could be applied.

As *Insight Systems* observed, the government control exception requires both receipt and "control" of proposals, while the electronic commerce exception requires only receipt. 110 Fed. Cl. at 579 n.20. In addition, while the government control exception requires that proposals be received "at the Government installation designated for receipt of offers," FAR 52.212-1(f)(2)(i)(B), the electronic commerce exception requires receipt "at the initial point of entry to the Government infrastructure," FAR 52.212-1(f)(2)(i)(A). The phrases presumably have different meanings. *See Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2071 (2018); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017); *Russello v. United States*, 464 U.S. 16, 23 (1983); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.").

Neither party has fully explained those textual differences. Nonetheless, taking the regulation's words seriously implies that there are situations where an electronic communication will be received at the time needed to satisfy the electronic commerce exception, but not at the particular server or with the degree of government control needed to satisfy the government control exception. Tr. at 61–63. Because the electronic commerce exception would apply in such situations while the government control exception would not, the electronic commerce exception changes the regulation's practical effect and therefore is not surplusage.

The government's surplusage argument creates problems of its own. The premise of the argument — that applying the government control exception to electronic submissions would nullify the electronic commerce exception — can only be correct if there is *no* situation where the electronic commerce exception applies and the government control exception (assuming it can cover electronic submissions) would not also apply. After all, unless the government control exception covers every case where the electronic commerce exception applies, the electronic commerce

exception has some independent application that changes the regulation's practical effect. But as shown, the two exceptions have textual differences, and the government control exception has at least one requirement that the electronic commerce exception omits: the requirement for "control" as well as receipt. FAR 52.212-1(f)(2)(i)(B). The government's effort to save the electronic commerce exception from redundancy thus implies that the government control exception's "control" element adds nothing to the regulation's meaning,[14] and is itself surplusage. The government's argument does not *solve* a surplusage problem; it *assumes* surplusage, just in a different part of the regulation.

That has two related consequences. The rule against surplusage does not apply in circumstances where all competing interpretations of a text make terms superfluous. *See Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2210 (2020); *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013); *Microsoft Corp. v. i4i L. P.*, 564 U.S. 91, 106 (2011). Because the government's own theory leaves at least some surplusage, the canon does the government no good. Similarly, where the rule against surplusage does apply, its significance is that *given the choice*, courts should adopt interpretations of enacted texts that give meaning to every word over interpretations that do not. *See Marx*, 568 U.S. at 385; *Microsoft Corp.*, 564 U.S. at 106.[15] This Court can do so by applying the government control exception to electronic submissions.

My second reason for rejecting the government's interpretation is that the government misapplies the canon that specific provisions displace general provisions. Def.'s MJAR at 16.

The government's theory is that because the electronic commerce exception applies "[i]f [a proposal] was transmitted through an electronic commerce method authorized by the solicitation," FAR 52.212-1(f)(2)(i)(A), it is the exception to the "late

---

[14] Because it would mean that requiring receipt plus control covers a range of circumstances as wide as requiring receipt alone.

[15] As noted above, "the rule against surplusage is not absolute[.]" Linda Jellum & David Charles Hricik, *Modern Statutory Interpretation* 147–48 (2006). "[R]edundancies are common in statutory drafting — sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication. The [Supreme] Court has often recognized: 'Sometimes the better overall reading of the statute contains some redundancy.'" *Barton*, 140 S. Ct. at 1453 (quoting *Rimini Street*, 139 S. Ct. at 881); *see also Reading Law* 174–79 ("Sometimes drafters do repeat themselves and do include words that add nothing of substance, out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach."). The same logic extends to interpreting agency regulations. *See Glycine & More*, 880 F.3d at 1344; *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). Several aspects of the regulation show that the "better overall reading" is eSimplicity's. *Barton*, 140 S. Ct. at 1453 (quoting *Rimini Street*, 139 S. Ct. at 881).

is late" rule applicable specifically to electronic submissions, and therefore displaces the government control exception. But the government ignores the third exception, which applies when, "[i]f this solicitation is a request for proposals, [a late proposal] was the only proposal received." FAR 52.212-1(f)(2)(i)(C). Both exceptions contain a condition ("if") limiting them to specific kinds of submissions. Those conditions should ordinarily be read *in pari materia. See, e.g., Strategic Hous. Fin. Corp. of Travis County v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010); *Branch v. Smith*, 538 U.S. 254, 381 (2003); *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972). On the government's logic, then, the third exception should be the only exception applicable to responses to requests for proposals. But the conditions for applying the exceptions overlap: What to do with an *electronic* response to a *request for proposals*? Treating the exceptions as exclusive within their domains, as the government contends is required by the rule that the specific displaces the general, puts them in conflict. The way to avoid the conflict is to treat the exceptions as limited, but *not* exclusive — in which case there is no reason for the electronic commerce exception to displace the government control exception.[16] *See Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996).

Although the government control exception can apply to electronically submitted proposals, I do not resolve whether its elements are met in this case. For it to apply, four elements must be proven: (1) the offer must be "received before award is made," (2) "the Contracting Officer [must] determine[] that accepting the late offer would not unduly delay the acquisition"; and "[t]here [must be] acceptable evidence to establish [3] that [the offer] was received at the Government installation designated for receipt of offers and [4] was under the Government's control prior to the time set for receipt of offers." FAR 52.212-1(f)(2)(i). The Navy never made the relevant determinations, and the record does not permit findings on those elements here. *See* Tr. at 25–26.[17] The Navy should address those matters on remand as necessary. *See ARKAY USA, Inc. v. United States*, 117 Fed. Cl. 22, 27, 29 (2014); *Nutech Laundry & Textile, Inc. v. United States*, 56 Fed. Cl. 588, 594 (2003); *see also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

---

[16] That reading is perfectly consistent with ordinary usage, for it is hardly unnatural for conditional language to create a new alternative without displacing other possibilities. "Members of the wedding party must arrive by 12:30 p.m. Those staying off-site should make travel plans accordingly. If you tell me that you do not have a car, I will arrange a taxi for you."

[17] In other cases addressing similar legal questions, the Court apparently had the benefit of a more detailed factual record on the relevant servers, their relationship to each other, and their processing of the proposals at issue. *FAST*, 124 Fed. Cl. at 698–700, 704–05; *Insight Systems*, 110 Fed. Cl. at 570–72.

## IV. <u>Injunctive Relief is Appropriate</u>

eSimplicity has requested an injunction. Pl.'s MJAR at 20–23. The following test applies:

> Once a plaintiff has succeeded on the merits, in determining whether to grant a permanent injunction, the court considers three factors: (1) whether the plaintiff will suffer irreparable harm if the procurement is not enjoined; (2) whether the harm suffered by the plaintiff, if the procurement action is not enjoined, will outweigh the harm to the government and third parties; and (3) whether granting injunctive relief serves (or is at least not contrary to) the public interest.

*FAST*, 124 Fed. Cl. at 707–08 (citing *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009); *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004); and *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 383 (2013)). Limited injunctive relief is appropriate to protect eSimplicity's rights on remand.

First, I conclude that injunctive relief is necessary to protect eSimplicity from irreparable harm. eSimplicity lost the opportunity to compete for a contract under the Solicitation because the Navy erroneously rejected its proposal as untimely. "It is well-established that the profits lost by an offeror because of the government's arbitrary or unlawful rejection of an offer constitute irreparable injury for purposes of injunctive relief." *FAST*, 124 Fed. Cl. at 708; *see also, e.g.*, *T Square*, 134 Fed. Cl. at 560 ("[P]laintiff has shown that absent injunctive relief, it will suffer irreparable harm in the form of a lost opportunity to compete for the award at issue."); *RLB Contracting*, 118 Fed. Cl. at 761 ("[I]n the context of a bid protest, the loss of an opportunity to compete for an award for which a party would not otherwise be disqualified is sufficient injury to warrant injunctive relief."); *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (2003) ("[A] lost opportunity to compete may constitute an irreparable harm[.]"). If an injunction does not issue, the Navy might consider other proposals submitted in response to the Solicitation and award a contract without considering eSimplicity's proposal, a harm that could only be addressed by additional bid protest litigation.

Second, the government has not identified any harm that might result from an injunction, except in the most conclusory terms. *See* Def.'s R&R at 10–11 ("[I]njunctive relief in this case would be drastic given its effect on the operating efficiency of the procurement process[.]"). The record contains no evidence that might outweigh the obvious injury to eSimplicity. I therefore conclude that the balance of harms favors injunctive relief to protect eSimplicity. *T Square*, 134 Fed. Cl. at 560.

Third, "[t]he public interest always favors the correct application of law." *RLB Contracting*, 118 Fed. Cl. at 761. "[W]here, as here, defendant erred, it is both proper and in the public interest, for the court to step in and protect the integrity of the procurement process." *T Square*, 134 Fed. Cl. at 561. Specific to the facts of this case, "the public interest is unquestionably served by an injunction requiring an agency to accept for evaluation a timely-received proposal." *FAST*, 124 Fed. Cl. at 708. Given the errors in the Navy's rejection of eSimplicity's proposal as untimely, it follows that an injunction halting the procurement pending the Navy's reconsideration would serve the public interest.

Because the Navy should have the opportunity to reconsider its decisions on remand, I do not consider it in the public interest to enjoin the Navy to accept eSimplicity's proposal. Rather, the Court shall enjoin the Navy not to award a contract under the Solicitation until it complies with the terms of the remand, as further explained below.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is **GRANTED** and Defendant's cross-motion is **DENIED**.

Pursuant to RCFC 52.2, the case is **REMANDED** for 60 days to the Navy for further proceedings. The Navy is **ORDERED** to reconsider its decision that eSimplicity's proposal was untimely in light of the Court's conclusion that the Navy's decision involved application of a file-size criterion that was not stated in the Solicitation. In the event that the Navy's reconsideration of that decision does not lead to acceptance of eSimplicity's proposal, the Navy is further **ORDERED** to consider whether the elements of the government control exception render eSimplicity's proposal timely. If the Navy determines that eSimplicity's proposal was timely submitted, the Navy shall accept an identical resubmission of the proposal if necessary.

The Navy may, in the alternative, cancel the Solicitation, revise the Solicitation to include a file size limit and new proposal deadlines, or take other action consistent with this Opinion.

It is further **ORDERED** that no later than **November 28, 2022**, the parties shall file either a stipulation of dismissal or a joint status report including the Navy's decisions on remand.

It is further **ORDERED** that if no stipulation of dismissal is filed, the parties shall file a joint status report no later than **December 27, 2022** proposing further proceedings in this case.

This case shall be **STAYED** pending the Navy's decision.

The Navy is **ENJOINED** from making an award under the Solicitation until further order of the Court or a joint stipulation of dismissal is filed, whichever comes first.

Pursuant to the Court's May 26, 2022 Protective Order (ECF 16), this Opinion has been issued under seal. The transcript of the September 1, 2022 hearing is under seal as well. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **October 12, 2022**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum (or a joint memorandum if the parties agree) explaining why redactions are necessary for each item of information for which a redaction is proposed.

The Clerk is directed to serve a certified copy of this order on the Navy via Regina Magee, Contracting Officer, Naval Supply Systems Command, Fleet Logistics Center Norfolk Contracting Department, Philadelphia Office, 700 Robbins Avenue, Building 2B, Philadelphia, PA 19111. *See* RCFC 52.2(b)(2).

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge